UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

PEGGY S. BATES,

                    Plaintiff,

         v.                                        **DECISION AND ORDER**
                                                        **04-CV-01118**
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

## I. INTRODUCTION

Plaintiff Peggy S. Bates challenges an Administrative Law Judge's ("ALJ")
determination that she is not entitled to disability insurance benefits ("DIB") under
the Social Security Act ("the Act").  Plaintiff alleges she has been disabled since
January 25, 2002, because of degenerative disc disease, arthritis, and urinary
incontinence.  Plaintiff met the disability insured status requirements of the Act at
all times pertinent to this claim.

## II.  BACKGROUND

Plaintiff filed an application for DIB on January 31, 2003.  Her application
was denied initially and, under the prototype model of handling claims without
requiring a reconsideration step, Plaintiff was permitted to appeal directly to the
ALJ.  See 65 Fed. Reg. 81553 (Dec. 26, 2000).   Plaintiff requested review of her
case by an ALJ, but indicated she did not wish to appear personally at an
administrative hearing (R. at 33).[1]  Plaintiff then executed a Waiver of Right to
Oral Hearing (R. at 36).   The ALJ considered the case *de novo*, and on

---

[1] Citations to the underlying administrative record are designated as "R".

1

December 22, 2003, issued a decision finding that Plaintiff was not disabled.  On July 28, 2004, the Appeals Council denied Plaintiff's request for review.

On September 24, 2004, Plaintiff filed a Civil Complaint challenging Defendant's final decision and requesting the Court review the decision of the ALJ pursuant to Section 205(g) and 1631(c) (3) of the Act, modify the decision of Defendant, and grant DIB benefits to Plaintiff.[2]  The Defendant filed an answer to Plaintiff's complaint on January 6, 2005, requesting the Court dismiss Plaintiff's complaint.  Plaintiff submitted a Memorandum of Law in support of Plaintiff's request for review of the ALJ's unfavorable determination of employment disability on March 24, 2005.  On May 4, 2005, Defendant filed a Memorandum of Law in Support of the Defendant's Motion for Judgment on the Pleadings[3] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  After full briefing, the Court deemed oral argument unnecessary and took the motions under advisement.   For the following reasons, this Court recommends that the Defendant's motion be granted.

### III. DISCUSSION

### A.    Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  <u>See</u> 42 U.S.C. § 405(g), 1383 (c)(3); <u>Wagner v. Sec'y of Health and Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990).  Rather,

---

[2] The ALJ's December 22, 2003, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.
[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under Northern District General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings…"

the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error.  See  Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, the Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.  See 20 C.F.R. § 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.   Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

---

[4] This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72,77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

**B.    Analysis**

**1.    The Commissioner's Decision**

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the nondisability requirements for a period of Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision (R. at 20);   (2) Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability (R. at 20); (3) Plaintiff had an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(b) (R. at 20); (4) These medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (R. at 20); (5) Plaintiff's allegations regarding her limitations were not totally credible (R. at 20); (6) Plaintiff was unable to perform any of her past relevant work (20 C.F.R. § 404.1565 (R. at 21);   (7) Plaintiff has the residual functional capacity to perform the full range of light work (20 C.F.R. § 404.1567) (R. at 21); (8) Based on an exertional capacity for light work, and the Plaintiff's age, education, and work experience, a finding of "not disabled" was directed by the Medical-Vocational Rule 202.22 (R. at 21); and (9) Plaintiff was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. § 404.1520(f) (R. at 21).  Accordingly, the ALJ determined Plaintiff was not entitled to a period of disability, or disability insurance benefits, under Sections 216(i) and 223, respectively, of the Social Security Act (R. at 21).

5

2.     **Plaintiff's Claims:**

Plaintiff challenges the ALJ's determination that she is not disabled and asserts the ALJ's decision is not supported by the substantial evidence of record. Specifically Plaintiff alleges that: a) she did not knowingly and voluntarily waive her right to representation when she elected to waive her right to an oral hearing and have a disability determination made on the evidence in the record, and thus was prejudiced by a lack of representation at the time the ALJ made his decision, b) the ALJ disregarded the opinions of Plaintiff's treating sources, and adopted the opinion of a non-examining, non-treating source, when making his disability determination, c) the ALJ disregarded Plaintiff's testimony concerning her pain, limitations, and the side effects of her medications, and failed to provide sufficiently specific reasons for rejecting her testimony in his decision, d) the ALJ erred in assessing Plaintiff as capable of performing the demands of light work, and e) the decision is not sufficiently detailed and specific as to the weight the ALJ assigned to the opinions Plaintiff's treating physicians, the consultative examiners, the State agency physician, and Plaintiff's self-reported symptoms. Each of Plaintiff's allegations will be addressed in sequence by the Court.

### a)  Waiver of Right to Counsel

Plaintiff's first challenge to the ALJ's decision is that he erred in finding that she waived her right to legal representation.

A claimant in a social security matter has a statutory right to representation. See 20 C.F.R. 404.1705. However, this right falls well below the standard of right to counsel established by the Sixth Amendment for criminal

cases.  See Evangelista v. Secretary of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).

While a social security claimant should be given appropriate notification of his or her right to representation, a claimant may, after receiving notification, waive the right by intelligently deciding to proceed *pro se*.  Id. at 142.  See also Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).  ("Mr. Wingert first claims that he was not properly advised of his right to employ counsel and therefore could not intelligently waive this right.  We do not agree.  The record shows that on November 7, 1986, he received a notice of his hearing from the Social Security administration which clearly explains a claimant's right to counsel.  In addition, the record contains Mr. Wingert's reply to this notice in which he indicates his desire to proceed without counsel and his reasonable grasp of the regulations and procedure involved.")  Id.

In this case, the ALJ concluded that "[t]he claimant elected to have a decision made on the evidence without an oral hearing.  Although the claimant was fully apprised of the right to representation, she chose to proceed with the hearing without representation" (R. at 16).  Plaintiff alleges she did not knowingly and voluntarily waive her right to representation, and thus was prejudiced by lack of counsel (R. at 8).  See also Plaintiff's Brief, p. 10.

This Court finds that substantial evidence supports the ALJ's determination in this regard.  Plaintiff was advised of her right to a hearing before an ALJ, and her right to representation, in her Notice of Disapproved Claim dated July 11, 2003 (R. at 29-32).  Plaintiff completed the form Request For Hearing By

Administrative Law Judge (HA-501-US) on September 18, 2003 (R. at 33).  She checked the box that states, "I do not wish to appear at a hearing and I request that a decision be made based on the evidence in my case."  Id.  Plaintiff signed and dated the form on the Claimant's Signature line, just below the paragraph that states, "You have a right to be represented at the hearing.  If you are not represented but would like to be, your Social Security Office will give you a list of legal referral and service organizations.  (If you are represented and have not done so previously, complete and submit form SSA-1696 (Appointment of Representative)."  Id.

On September 25, 2003, Plaintiff completed the form Waiver of Right to Oral Hearing (HA 4508), explaining her reasons for not proceeding with a hearing before an ALJ (R. at 36).  The form contains the following acknowledgment: "I have been advised that I have the right to have an oral hearing and that this oral hearing will provide me with an opportunity to present witnesses and to explain in detail to the administrative law judge, who will make the decision in my case, the reasons why my case should be allowed.  I understand that this opportunity to be seen and heard could be effective in explaining the facts in my case.  (It could be especially useful in disability cases, since the administrative law judge would have an opportunity to hear an explanation as to how my impairments prevent me from working and restrict my activities.)  I have been given an explanation of my right to representation, including representation at a hearing by an attorney or other person of my choice."  Id.

On this same form, Plaintiff was given the following notice just above her signature, "I have been advised that, if I change my mind, I can request an oral hearing prior to mailing of the decision in my case.  In this event, I can make the request with the Social Security office or with the hearing office."  Id.

On October 7, 2003, the ALJ sent Plaintiff a letter acknowledging her request to have a decision made on her record without a hearing (R. at 38).  Included with the letter was a warning to Plaintiff in large, capitalized type, advising her that Social Security records indicated she was not represented, and if she wished to obtain representation, she should do so immediately (R. at 39).  The notice requested that Plaintiff complete and sign a Waiver of Right to Representation form if she did not intend to seek representation.  Id.  Also included with information sent by the ALJ was an explanation of Plaintiff's right to representation and a list of legal services providers offering low or no cost representation to claimants in social security matters (R. at 40-43).

A review of the record indicates that Plaintiff did not complete and sign a Waiver of Right to Representation form as requested by the ALJ.  She did, however, return the form Claimant Questionnaire (R. at 105-106).  In answer to question 5, Plaintiff indicated she was not represented by an attorney or other qualified representative (R. at 106).   At question 6, Plaintiff indicated she intended to obtain an attorney.  Id.  Just below question 6, is the following disclosure: "You have the right to be represented by an attorney or other qualified representative.  If you can't afford an attorney or other qualified representative but would like one, you might try one of the organizations listed on the enclosed

Attorney/Representative Referral List." Id.  However, Plaintiff did not notify the Social Security Office or the Office of Hearings that she had obtained representation, or that she had changed her mind and wished to appear personally at a hearing.  More than two (2) months after advising Plaintiff that, at her request, a decision would be made on the record, the ALJ issued his decision finding Plaintiff was not entitled to a period of disability under the Act (R. at 16-21).

It is apparent Plaintiff knew of her right to representation at the time of her request for a hearing before an ALJ, but opted to forego seeking counsel at that time.  After the ALJ's decision finding Plaintiff was not disabled during the time frame relevant to her claim, Plaintiff sent a letter dated December 30, 2002, to the Social Security Office (R. at 8-12).  In her letter, she stated, "I did not realize that if I didn't have an attorney @ the start of this, I would have a difficult time getting one now" (R. at 8).

The Court finds Plaintiff was properly notified of her right to representation in this matter, and knowingly and voluntarily waived that right when she did not seek the assistance of counsel prior to the date of the decision in her case by the ALJ.  Evidence contained in the record shows Plaintiff was advised of her right to representation at least four (4) times, and was notified in early October 2003 that if she wished to obtain representation, she should do so immediately (R. at 29-32, 33, 36, 39-43, 106).  Further, Plaintiff stated in her letter to the Social Security Administration of December 30, 2004, that she did not intend to waive her right to

representation, but acknowledged, "…maybe I didn't proceed in a timely manner" (R. at 8).

When a claimant in a social security matter knowingly and voluntarily waives his or her right to representation, the ALJ is under a heightened obligation to ensure that the claimant receives a full and fair hearing.  See Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980). ("Although a claimant for SSI disability benefits is entitled to be represented by counsel if he so desires, the Secretary is under no obligation to furnish such counsel.  If, however, the claimant does appear *pro se*, the ALJ has a 'duty…to scrupulously and conscientiously probe into, and inquire of, and explore for all the relevant facts…' ").  See Hankerson v Harris, 636 F.2d 893, 895 (2d Cir. 1980) quoting Gold v. Secretary of HEW, 463 F. 2d 38, 43 (2d Cir. 1972).

In the instant case, Plaintiff opted to have the ALJ decide her case on the record, without appearing personally at a hearing (R. at 33, 36).  However, the ALJ was able to review Plaintiff's medical records, as well as her disability report, a questionnaire completed by Plaintiff about her daily activities and limitations caused by her impairments, and letters and other information provided by Plaintiff (R. at 44-215).  From his decision, it is clear the ALJ observed his heightened duty to Plaintiff and thoroughly and conscientiously examined her record for the relevant facts before concluding that she was not under a disability, as defined by the Act, at any time from Plaintiff's alleged onset of disability date through the date of his decision.  Thus, the Court finds Plaintiff was not prejudiced at her hearing by the ALJ's failure to perform his duty to an unrepresented claimant.

**b)  Treating Physician Rule/Consideration of the Record**

Plaintiff's second challenge to the ALJ's decision is that he disregarded the opinions of her treating sources, and adopted the opinion of a non-examining, non-treating source, when making his disability determination.   See Plaintiff's Brief, p. 7.   Although not expressly stated, this Court construes Plaintiff's argument as having two prongs: first, that the ALJ failed to properly apply the treating physician rule, and second, that the ALJ did not consider the entire record, but only the portion of the record that served to support his determination that Plaintiff was not disabled.

**i)  Application of Treating Physician Rule**

According to the "treating physician's rule,"[5] the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."   20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.   Under  C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating

---

[5] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. SS 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court.  See de Roman, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Having reviewed the evidence at issue, this Court detects no reversible error in the ALJ's treatment of the opinions of Plaintiff's treating physicians, Doctors Mina, Vigeant, Latif, Van Eenenaam, Sherman, Turcotte, and Winfield. Rather, the ALJ's decision reflects his extensive evaluation of all the medical evidence accumulated in the record from the date of Plaintiff's alleged disability on January 25, 2002, through the date the ALJ issued his decision on December 22, 2003 (R. 16-21).   The medical evidence includes treatment notes, evaluations of Plaintiff's progress, and test results (R. at 99-217). While the treatment notes, test results, and opinions of Plaintiff's treating physicians reflect that she was being treated for degenerative disc disease in her lower back, disc disease in her cervical spine, urinary incontinence, and benign breast cysts, none of Plaintiff's treating physicians opined that her impairments were of such severity that she would be precluded from performing any substantial gainful activity.

Plaintiff was first treated by Dr. Mina for low back pain on January 29, 2002 (R. at 117).  He noted Plaintiff injured her back on January 25, 2002, when

she was pushing a client in a chair, and the current injury was similar to an injury Plaintiff suffered in April 2000.  Id.  Upon physical examination, Dr. Mina noted Plaintiff had back tenderness, and mild muscle spasm.  Id.  Her range of motion and flexion was 60 degrees, with negative straight leg-raising, equal deep tendon reflexes, and no sensory deficit.  Id.  The doctor diagnosed low back syndrome, and recommended Plaintiff stay out of work for 10 days, apply moist heat, do back exercises, and take the pain reliever Ultracet.  Id.  When Dr. Mina re-examined Plaintiff on April 18, 2002, he found no evidence of muscle spasm, and noted Plaintiff had good range of motion, equal deep tendon reflexes, and no sensory deficit (R. at 118).  Dr. Mina also recorded Plaintiff had seen Dr. Van Eenenaam, who recommended conservative treatment.  Id.  Dr. Mina recommended Plaintiff return to work, but noted, "…she was not happy with this recommendation."  Id.

Plaintiff's first visit with Dr. Van Eenenaam took place on April 2, 2002 (R. at 153-154).  Plaintiff reported low back pain, with shooting pain in her right leg (R. at 153).  She told the doctor her left leg pain had resolved, her symptoms were getting better, but she was still sore.  Id.  Upon examination, the doctor noted Plaintiff could heel and toe walk well, and could flex forward and touch her toes (R. at 154).  While Plaintiff was tender over the right and left S1 joint areas, her reflexes were intact at both knees and ankles, straight leg-raising was negative for radiculopathic symptoms, quad and hamstring strength was good, and sensory testing was unremarkable except for some tingling sensation in the lateral aspect of the right leg.  Id.  The doctor reviewed Plaintiff's x-ray and MRI

14

results and found they reflected mild degenerative disc disease, disc discoloration at the L1-S1 level, and a small right disc herniation. Id. Dr. Van Eenenaam recommended physical therapy, and possible steroid injections. Id. His notes reflect he would refer Plaintiff for a consultation with a surgeon, but did not think her symptoms warranted surgery. Id. At the time of the examination, the doctor noted Plaintiff should not lift more than 10 pounds while at work, or engage in frequent bending, and gave her a note stating those restrictions. Id.

Plaintiff was examined by Dr. Latif on April 17, 2002 (R. at 155-156). The doctor noted Plaintiff had mild pain that she described as achy, sharp, and burning (R. at 155). He also recorded there was no radiation of pain into Plaintiff's right thigh, although Plaintiff reported pain in her right calf and ankle, and numbness and tingling in both feet. Id. Upon examination, the doctor noted Plaintiff did not appear to be in any discomfort (R. at 156). She had mild tenderness in her cervical spine, and moderate tenderness in her lumbar spine. Id. Plaintiff had normal muscle tone, strong and symmetrical deep tendon reflexes, normal gait, and negative bilateral straight leg-raising. Id. Dr. Latif assessed Plaintiff with chronic low back pain, and he recommended physical therapy along with conservative medication. Id.

Plaintiff followed up with Dr. Latif on May 29, 2002 (R. at 157). She reported a 30 to 40 percent improvement in her back symptoms since she had been receiving physical therapy, less tingling in her feet, and less weakness in her legs, although she still claimed pain in her right leg that was mostly centered in her calf and heel. Id. Plaintiff's physical examination was unremarkable, and

the doctor noted she had normal gait, strong and symmetrical deep tendon reflexes, and negative bilateral straight leg-raising.  Id.  Dr. Latif recommended continued conservative treatment, with physical therapy and medications, including Skelaxin and Motrin as needed.  Id.

On July 18, 2002, Dr. Latif reviewed the results of Plaintiff's EMG study of her lower extremities (R. at 158-159).  He noted the results for both motor and sensory nerves were normal, and that needle testing in the muscles of the lower extremities showed no evidence of denervation (R. at 159).

Plaintiff followed up with Dr. Latif on September 3, 2002 (R. at 160).  She reported intermittent achy and burning pain in her low back and hips, and on and off neck pain.  Id.  Upon examination, Plaintiff's gait was normal, and deep tendon reflexes were strong and symmetrical.  Id.  The doctor noted a work-up for Plaintiff's upper extremity was at her discretion.  Id.

Plaintiff's next visit with Dr. Latif was on January 7, 2003 (R. at 161).  Plaintiff reported she continued to experience low back pain with no change in intensity.  Id.  She denied having neck pain, however.  Id.  Plaintiff's physical examination was normal, and the doctor recommended that Plaintiff continue with conservative medications.  Id.

On September 17, 2002, Plaintiff was treated by Dr. Sherman for a bladder problem (R. at 169).  The doctor recommended dilation of her urethra.  Id.  Plaintiff had a renal and bladder untrasound on September 26, 2002, and the results showed no significant abnormalities (R. at 172).

16

Plaintiff had micro calcific clusters removed from her left breast by Dr. Turcotte on November 15, 2002 (R. at 181-182).  Pathology reports showed no evidence of cancer (R. at 183-189).

On March 17, 2003, Plaintiff was examined by Dr. Winfield for pain in her neck (R. at 190-194).  The doctor diagnosed classic Lhermitte's symptom, and severe ventral spinal cord compression at C3-C4 (R. at 193).  Dr. Winfield also reviewed Plaintiff's EMG studies performed on July 18, 2002, and noted the studies were unremarkable with no evidence of radiculopathy or peripheral neuropathy in her lower extremities.  Id.  The doctor recommended anterior cervical discectomy at C3-C4.  Id.  Plaintiff underwent surgery as recommended by Dr. Winfield in early April 2003, and followed up with the doctor on April 30, 2003 (R. at 195-196).  Dr. Winfield noted Plaintiff reported a great deal of improvement in her symptomatology, including termination of her Lhermitte's symptom, and much steadier legs (R. at 195).  The doctor recommended Plaintiff wean from her surgical collar to a soft collar, and then to no collar.  Id.  The doctor also recommended Plaintiff use the drug Neurontin for 30 days longer, and then wean from that medication.  Id.  Dr. Winfield discharged Plaintiff from neurological care, and would follow up with her only on an "as needed" basis.  Id

Plaintiff was examined by a State consultative examiner, Dr. Amatucci, on June 12, 2002 (R. at 198-200).  Plaintiff reported she was doing well with regard to her neck problems, but still had low back pain (R. at 198).  She told the doctor she could not lift anything that weighed more than 10 pounds, could not sit or stand for longer than 15 minutes, or walk more than 1000 feet.  Id.  During the

examination, Plaintiff stood up after approximately 15 minutes, and the doctor observed that she seemed more anxious than in pain (R. at 198-199).  He noted Plaintiff could stand and walk well, and had a good heel/toe walk and gait (R. at 199).   Dr. Amatucci found Plaintiff had a decreased range of motion of her cervical spine, but no tenderness or spasm.  Id.   He observed she had a reasonable range of motion in her lumbosacral spine, had normal straight leg-raising on her left side, but was only able to raise her right leg to 45 degrees.  Id. Her neurologic examination and the examination of her extremities were normal. Id.  Dr. Amatucci's impression was that Plaintiff had some limitations in sitting and standing for long time periods, but could sit and stand (R. at 200).  He noted she walked well, and had good results from cervical surgery.  Id.  An x-ray of Plaintiff's lumbar spine performed on the day of her examination by Dr. Amatucci revealed degenerative disc disease at multiple levels (R. at 203).

On June 27, 2003, Dr. Latif requested an MRI of Plaintiff's lumbar spine (R. at 204).  The MRI revealed mild degenerative disc disease at the L5-S1 level, with a small to moderate sized disc extrusion on the right, and deviation of the right S1 root.  Id.

On July 9, 2003, Plaintiff was examined by Dr. Graham for the purpose of her worker's compensation claim (R. at 205-207).  He opined Plaintiff had a marked degree of disability relative to her lower back and may require surgical intervention (R. at 207).

On August 22, 2003, Plaintiff was treated for sciatica on an emergency basis (R. at 214).  Plaintiff was treated for back pain again on an emergency

18

basis on August 30, 2003 (R. at 216-217).  No additional reports from Plaintiff's treating physicians are included in the record.

On July 11, 2003, Plaintiff's medical records, including those of her treating physicians as well the records of consultative examiners, were reviewed by State agency physician Dr. Seok (R. at 28).  Dr. Seok opined Plaintiff was capable of performing the demands of light work, with mild limitations in her ability to push or pull with her lower extremities.  Id.

While Plaintiff claims to be disabled to the degree that she can perform no substantial gainful activity, none of the medical evidence submitted by her treating or examining physicians supports that contention.

As an example, Dr. Mina opined Plaintiff could return to her job as a licensed vocational nurse on April 18, 2002, approximately 12 weeks after she slipped and injured her back (R. at 118).

When Plaintiff was examined by Dr. Latif on April 17, 2002, he noted she did not appear to be in any discomfort (R. at 156).  Her gait and sensory and motor testing were normal.  Id.  Dr. Latif's treatment recommendations were conservative medications and physical therapy.  Id.  A review of Plaintiff's EMG requested by Dr. Latif revealed normal results (R. at 159).

While Dr. Latif's recommended conservative course of treatment for Plaintiff's lower back problem did not change during the time he treated her, he did note her complaint of "off and on neck pain" (R. at 160).  Dr. Latif referred Plaintiff to Dr. Winfield, who successfully performed an anterior cervical fusion of Plaintiff's spine at C3-C4 (R. at 195-196).  Plaintiff's neck pain resolved, and

upon examination by Dr. Amatucci on June 12, 2003, he found only a decreased range of motion in the cervical spine (R. at 199).

Like Dr. Mina and Dr. Latif, Plaintiff's treating physician Dr. Van Eenenaam also recommended a course of conservative treatment, including physical therapy (R. at 154).   The doctor's examination of Plaintiff was unremarkable and he opined, "Things are gradually improving."  Id.  At the time of Plaintiff's examination by Dr. Eenenaam on April 2, 2002, it is clear he contemplated she would return to work, and gave her a note restricting her to lifting no more than 10 pounds, and from bending frequently.  Id.

This Court finds no reversible error with regard to the manner in which the ALJ evaluated the assessments of Plaintiff's treating physicians.   Further, as noted above, additional support for the ALJ's decision is found in the determinations made by the State consultative examiner, Dr. Amatucci (R at 198-200) and State Agency review physician. (R at 208-213).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.  See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these examining and non-examining State agency medical consultants are consistent with the findings of the treating providers.  See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

### ii) Consideration of the Record

With the exception of worker's compensation physician Dr. Graham, none of Plaintiff's physicians opined she had a marked degree of disability (R. at 207).

Although Plaintiff appears to assert that Dr. Graham's opinion should have been given controlling weight, that opinion is inconsistent with the record as a whole.  As set forth in the Regulations, an opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is well-supported.  See 20 C.F.R. § 404.1527(d)(3), 416.927(d)(3); see also Caneglosi v. Chater, No. 94 CV-2694, 1996 WL 663161, at *4 (E.D.N.Y. Nov. 5, 1996 (noting that "unsupported statements by a treating or other medical source that the claimant is disabled are not binding on the trier of fact and do not preclude a finding of non-disability").

It is equally well-settled that the less consistent an opinion is with the record as a whole, the less weight it is to be given.  See C.F.R. § 404.1527(d)(4), 416.927(d)(4).  In the Court's view, the assessment of Dr. Graham that, "The examinee at this time still has a marked degree of disability relative to her lower back," was inconsistent with the findings of other examining physicians, including

Doctors Mina, Latif, Amatucci, Van Eenenaan, and the review by State agency review physician Dr. Seok.  Further, the opinion of Dr. Graham was not binding on the ALJ, as the standard for disability under workers' compensation rules is different from that for social security disability.  See 20 C.F.R. § 404.1504; see also Rosado v. Shalala, 868 F.Supp. 471, 473 (E.D.N.Y.1994) (citing Coria v. Heckler, 750 F.2d 245, 247 (3d Cir.1984) ("Although plaintiff's doctors had checked off that plaintiff was disabled on forms sent to the Workers' Compensation Board, the standards which regulate workers' compensation relief are different from the requirements which govern the award of disability insurance benefits under the Act. Accordingly, an opinion rendered for purposes of workers' compensation is not binding on the Secretary."); Crow v. Comm'r of Soc. Sec., No.01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (the ALJ was not required to adopt a treating physician's opinion that Plaintiff was "totally" disabled, in part, because "the opinions were rendered in the context of [Plaintiff's] W[orkers'] C[ompensation] claim, which is governed by standards different from the disability standards under the Social Security Act").

The medical opinions of Plaintiff's treating physicians, Doctors Mina, Latif, Van Eenenaam, were considered along with the opinions of consultative examiners, Doctors Amatucci and Graham, and State agency review physician, Dr. Seok.  The ALJ recognized Plaintiff had the severe impairments of degenerative disc disease and arthritis, but generally Plaintiff's physicians noted relatively normal results upon examination and testing of Plaintiff (R. at 18). Though there was some divergence of opinion about the level of work activity of

which Plaintiff might be capable, the ALJ considered both unrefuted objective findings, as well as Plaintiff's self-reported symptoms, as the most reasonable measure of determining Plaintiff's residual functional capacity (R. at 17-19). While the ALJ found Plaintiff's allegations of totally debilitating pain and limitations not entirely credible, he considered Plaintiff's medical record as compiled from both treating and examining physicians, as well as her self-reported symptoms. <u>Id</u>. The ALJ noted Plaintiff's doctors' reports of her limited medical findings, and that she engaged in a wide range of daily activities (R at. 18). The ALJ found Plaintiff could not perform her past relevant work as a nurse, a position that requires occasional heavy lifting, but could perform the requirements of light work, as well as sedentary work (R. at 19-20).

Based on the foregoing, the Court finds that it was not improper for the ALJ to consider the opinion of Plaintiff's treating physicians, Doctors Mina, Latif, Van Eenenaam, and Winfield, but to ultimately predicate his disability determination on the objective medical results and consistent medical opinions contained in the record. It is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record. <u>See Richardson v. Perales</u>, 402U.S. 389, 399, 91 S. Ct. 1420, 1426, 28 L. Ed. 2d 842 (1971).

Under the circumstances presented in this case, it cannot be said that the ALJ disregarded the medical evidence from Plaintiff's treating physicians concerning her level of disability and adopted the opinions of non-examining or non-treating sources. Further, it cannot be said that the ALJ considered only the

small portion of the record that supported his conclusion that Plaintiff was not under a disability during the relevant time frame for her claim.  Rather, the Court finds the ALJ afforded less weight to the assessment of Dr. Graham, whose assessment was done for purposes of Plaintiff's workers' compensation eligibility, than he afforded the medical opinions that were consistent with the objective clinical findings in the record.

### c) Credibility Determination

Plaintiff's third challenge to the ALJ's decision is that the ALJ disregarded her testimony regarding her pain and limitations, and the side effects of her medications.  See Plaintiff's Brief, p. 4-9.  The ALJ considered Plaintiff's subjective complaints of pain and afforded the complaints some weight in finding that Plaintiff was not disabled and retained the residual functional capacity for the full range of light work (R. at 18).  However, the ALJ noted in his decision that there were no objective findings to support Plaintiff's subjective complaints.  Id.  Thus, the ALJ found Plaintiff's allegations of totally debilitating pain and limitations, and incapacity from the side effects of medication, not entirely credible.  Id.

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered.  See Ber v. Celebrezze, 333 F.2d 923 (2d Cir. 1994).  Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony.  See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y. 1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. <u>See</u> 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529 (b), 416.929; SSR 96-7p; <u>Gernavage v. Shalala</u>, 882 F. Supp. 1413, 1419 (S.D.N.Y. 1995).

In this case, there is no question Plaintiff's lower back problem is a severe impairment, but her reported symptoms suggest a greater restriction of function than would be indicated by the medical evidence in the record. Thus, the ALJ considered Plaintiff's daily activities, the type and nature of the symptoms reported, the medication and other treatment Plaintiff used to alleviate her symptoms, and any other measures she used to relieve pain (R. at 17-19). <u>See</u> 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p. The ALJ's decision shows he reviewed Plaintiff's complaints of pain and other symptoms, but found the medical and other evidence did not corroborate Plaintiff's claim of disabling pain. <u>Id</u>.

With respect to Plaintiff's complaints of side effects from medications, there is little evidence in the record that Plaintiff had side effects from medication and reported this information to her treating physicians. Only Dr. Latif noted Plaintiff had stomach upset from Celebrex, and he changed her pain reliever to Motrin (R. at 157).

The ALJ also reviewed information about Plaintiff's daily activities that she reported in her adult disability report (R. at 80-87)). Plaintiff disclosed that she

was independent in the basic activities of daily living, including bathing, dressing, and hair care (R. at 81-82).  She reported she did laundry, light housekeeping, and meal preparation including cooking (R. at 82).  Plaintiff can drive a car, shop, and take walks (R. at 83, 85).  She listed her hobbies as sewing, crocheting, reading, and playing cards (R. at 84).  Plaintiff is a member of a church, and visits with friends and relatives (R. at 85).  Such wide and varied activities and interests do not corroborate Plaintiff's claim of totally disabling pain and other limitations.

In sum, the Court finds the ALJ properly considered Plaintiff's pain, reported limitations, and complaints of side effects from medication, along with the medical and other evidence in the record, and further finds the totality of evidence does not substantiate Plaintiff's claim that her pain and other symptoms were disabling.  Accordingly, the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony, presented a summary of his evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence (R. at 15-16). See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir. 1984).

### d)  Residual Functional Capacity Assessment

Plaintiff's fourth challenge to the ALJ's decision is that the ALJ did not properly assess her limitations when determining her residual functional capacity. See Plaintiff's Brief, p. 8-9.

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).

An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ determined that Plaintiff had the RFC to perform light work.  That decision was supported by substantial evidence for the reasons set forth above.  Plaintiff's challenge to the ALJ's assessment is based on acceptance of Dr. Graham's assessment of her condition for purposes of a workers' compensation claim, and upon acceptance of Plaintiff's self-reported pain, limitations, and side effects of medication.  See Plaintiff's Brief, p. 4-9.

As discussed above, the ALJ considered the medical evidence of Plaintiff's disability proffered by Dr. Graham, as well as the evidence offered by Plaintiff's treating physicians, Doctors Mina, Latif, Van Eenenaam, and Winfield,

27

and found Plaintiff's allegations of disabling pain and limitations to be based primarily on Plaintiff's self-reported symptomatology (R. at 18).   Dr. Graham's opinion of Plaintiff's physical capabilities differed significantly from the independent assessments and objective evidence proffered by Doctors Mina, Latif, and Van Eenenaam.

Further, Plaintiff offered little objective evidence of any side effects from medications.  In the record, there is only one report of a medication side effect to a physician, and the physician changed Plaintiff's medication from pain reliever Celebrex to Motrin (R. at 157).

In addition, the ALJ analyzed Plaintiff's credibility, and while his designation of Plaintiff's impairments as "severe" reveal the ALJ's acknowledgment that Plaintiff suffered from a serious back condition, the ALJ found Plaintiff's allegation of total disability not credible (R. at 18).  The ALJ found Plaintiff unable to perform the heavy lifting demands of her prior past relevant work as a nurse, but assessed her as able to perform the physical demands of light work (R. at 19).

### e)  Level of Detail in ALJ's Decision

Plaintiff further contends that the ALJ did not provide sufficient reasons for his finding of "not disabled" as required by SSR 96-7p.  See Plaintiff's Brief, p. 7-8.

The ALJ's disability determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent

reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Morseman v. Astrue, 571 F.Supp.2d 390, 396 (W.D.N.Y. 2008)(quoting SSR 96-7p).

This Court finds that the ALJ's decision is conclusory in several respects and does not contain the sort of detailed analysis and explanation that is both customary and critical to meaningful review.  However, where (as here) the Court's review of the record indicates that the ALJ's decision was supported by substantial evidence, the decision may be upheld notwithstanding the lack of specificity.  See Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004)(upholding ALJ's determination even though decision lacked sufficient specificity).  In other words, for the reasons set forth above, although the ALJ did not provide a full explanation of the reasons for his decision, this Court's comprehensive review of the record enables it to determine that the ultimate determination was supported by substantial evidence.

It must be noted, however, that the Court's decision in this respect should not in any way be interpreted to minimize the Commissioner's responsibility to set forth sufficient reasons in support of decisions denying benefits.  As directed by the Second Circuit and notwithstanding its finding in this particular case, this Court would not hesitate to recommend remand where the ALJ's failure to provide an adequate explanation frustrates meaningful review.  Id. at 32-33 ("[W]e emphasize that under the regulations, see 20 C.F.R. § 404.1527(d)(2), the Commissioner is required to provide 'good reasons' for the weight she gives to the treating source's opinion. This requirement greatly assists our review of the

Commissioner's decision and 'let[s] claimants understand the disposition of their cases.' We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.")(internal citations omitted).

## IV.  CONCLUSION

After carefully examining the administrative record, this Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ examined the record, afforded appropriate weight to the medical evidence, including Plaintiff's treating physicians, and afforded Plaintiff's subjective claims of pain and other limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error.  Because the Court further finds that substantial evidence supports the ALJ's decision, it is ordered that Defendant's Motion for Judgment on the Pleadings is GRANTED, that Plaintiff's Motion for Judgment on the Pleadings is DENIED, and that the decision of the Commissioner is affirmed.

Respectfully Submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   December 11, 2009

Syracuse, New York

31